

# KEN PAXTON

ATTORNEY GENERAL OF TEXAS

November 13, 2017

The Honorable Abel Herrero
Chair, Committee on Land & Resource
   Management
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. KP-0175

Re: Whether an appraisal district is authorized to modify the boundary of a school district upon receipt of information suggesting the survey line is inaccurate (RQ-0168-KP)

Dear Representative Herrero:

You ask whether "a tax appraisal district has authority to detach and annex property from an independent school district."[1] As background, you explain that "the Magnolia Independent School District ("Magnolia ISD") and the Montgomery Independent School District ("Montgomery ISD") are contiguous public school districts located within Montgomery County." Request Letter at 1. You further explain that the recognized boundary line between the districts was "set by survey lines" and has not changed "for at least sixty years." *Id.*[2] You tell us that a developer provided information to the Montgomery County Appraisal District "suggesting that one of the survey lines marking the boundary between Magnolia ISD and Montgomery ISD was incorrect," and thereafter the appraisal district "moved a portion of the survey line," which resulted in "annexing a portion of Magnolia ISD territory to Montgomery ISD." *Id.* Furthermore, you state that the appraisal district did not seek approval from either school district "to make this change to the well-established boundary line." *Id.*

You question the appraisal district's authority to take such action and suggest that section 13.051 of the Education Code provides the exclusive procedure to effectuate this change. *Id.* at 1–2. Section 13.051 provides an administrative scheme for detaching and annexing territory between contiguous school districts. TEX. EDUC. CODE § 13.051. The process begins with a petition, which both school districts' boards of trustees must approve, subject to appeal to the Commissioner of Education. *Id.* § 13.051(a), (d), (j). The school districts must also hold hearings to consider the effects of the proposed change on affected persons. *Id.* § 13.051(g)–(h). If approved, the commissioners court of the county where the territory is located must enter an order

---

[1]Letter from Honorable Abel Herrero, Chair, House Comm. on Land & Res. Mgmt., to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (June 29, 2017), https://www.texasattorneygeneral.gov/opinion/requests-for-opinions-rqs ("Request Letter").

[2]Briefing provided by Magnolia ISD similarly states that the "issue here is the location of the T.J. Nichols Survey line which serves as a marker delineating the boundary between the two school districts." *See* Brief from Douglas R. Brock, Walsh Gallegos Treviño Russo & Kyle, P.C., to Virginia K. Hoelscher, Chair, Op. Comm. at 1 (July 27, 2017) ("Magnolia ISD Brief") (on file with the Op. Comm.).

redefining the boundaries of the districts affected by the transfer. *Id.* § 13.051(i). If Montgomery County residents living within the disputed area, historically considered part of Magnolia ISD, desired to detach their property and annex it into Montgomery ISD, section 13.051 would provide an appropriate avenue to attempt such a change. The tax appraisal district has no authority to detach property from one school district and transfer the property to another school district under section 13.051.

However, based on the limited facts provided, it is not clear that the appraisal district detached property from one district and annexed it to another as contemplated in section 13.051. It appears a dispute exists about the accuracy of a survey relied on to determine the boundary between the two districts, and the appraisal district concluded that the long-standing boundary line adopted by the school districts is inaccurate.[3] Addressing a similar dispute between two school districts, one Texas court held section 13.051 of the Education Code inapplicable

> because one district was not seeking to actually detach or annex additional property into its district, which would have required TEA oversight, but was instead seeking a judicial declaration of the "parties' rights, interests, and obligations," as to the Disputed Area and the location of its boundary, which could be appropriately resolved through a declaratory judgment action.

*Nw. Indep. Sch. Dist. v. Carroll Indep. Sch. Dist.*, 441 S.W.3d 684, 687 (Tex. App.—Fort Worth 2014, pet. denied) (*citing Carroll Indep. Sch. Dist. v. Nw. Indep. Sch. Dist.*, 245 S.W.3d 620, 625–26 (Tex. App.—Fort Worth 2008, pet. denied)). In that case, the districts defined their joint boundary as conterminous with the county line. *Carroll Indep. Sch. Dist. v. Nw. Indep. Sch. Dist.*, 245 S.W.3d at 624. A court determined that the county line was farther north than previously believed, and a boundary dispute thereafter arose between the two school districts about whether to modify the school district boundary line consistent with the newly drawn county line. *Id.* Clarifying the nature of the suit, the court explained that one school district did not seek to detach and annex area from the other district but instead sought a "determination regarding in which of these districts the Disputed Area is, and always has been, located." *Id.* at 625. If the nature of the dispute in Montgomery County is similar, section 13.051 may not apply to the issue you raise.

Even if section 13.051 is inapplicable, the question remains whether the appraisal district has independent authority to determine the accuracy of the survey lines establishing the boundaries of the school districts and to modify those lines. Chapter 6 of the Tax Code sets out the procedures for the local administration of property taxes and establishes a tax appraisal district in each county, making the appraisal district "responsible for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district." TEX. TAX CODE § 6.01(a)–(b); *see also* 34 TEX. ADMIN. CODE § 9.3002 (requiring appraisal offices to

---

[3]Magnolia ISD informs us that it has "no records or recollection of any boundary dispute issues between the two districts and specifically no concerns between the two districts over the location of the T.J. Nichols Survey Line." Magnolia ISD Brief at 1. However, the facts as described indicate that at least one property owner in the disputed area questions the accuracy of the boundary line. *See id.* at 2; Request Letter at 1.

"develop and maintain a system of tax maps covering the entire area of the taxing units for whom each office appraises property"). No provision within chapter 6 authorizes the appraisal district to determine or correct the boundaries of a taxing unit.[4] Instead, the Tax Code requires the taxing unit, such as a school district, to notify the appraisal district of the taxing unit's boundaries: "If a new taxing unit is formed or an existing taxing unit's boundaries are altered, the unit shall notify the appraisal office of the new boundaries within 30 days after the date the unit is formed or its boundaries are altered." TEX. TAX CODE § 6.07. Furthermore, section 13.010 of the Education Code requires each school district to file with the Texas Education Agency:

> (1) a complete and legally sufficient description of the boundaries of the district;
>
> (2) a map of the district that:
>
>> (A) is drawn to the county general highway maps produced by the Texas Department of Transportation or a similar map of sufficient detail to display the names of visible features that the boundaries follow or to which the boundaries are in close proximity; and
>>
>> (B) is an accurate and legible representation of the boundaries in relationship to other features on the map; and
>
> (3) a list of voting precincts in the district . . . .

TEX. EDUC. CODE § 13.010(a). Read together, these provisions require a school district to determine where the physical boundaries of the district exist and to forward that information to the appropriate entities.[5] We find no separate authority authorizing an appraisal district to make an independent determination as to the legal boundaries of a school district. Thus, the Legislature has not given an appraisal district independent authority to determine or alter the boundaries established by a school district.

---

[4]A taxing unit is an entity "that is authorized to impose and is imposing ad valorem taxes on property." TEX. TAX CODE § 1.04(12). An appraisal district itself does not have authority to impose taxes and is therefore not a taxing unit. Tex. Att'y Gen. Op. No. JM-919 (1988) at 2.

[5]To the extent that a question exists about the location of a district's boundaries, a declaratory judgment action may be brought, including by an aggrieved property owner, to obtain a judicial determination as to the actual location of the boundary of the school district.

## S U M M A R Y

A tax appraisal district has no authority to detach property from one school district and transfer the property to another school district under section 13.051 of the Education Code.

The Legislature has not given an appraisal district independent authority to determine or alter the boundaries established by a school district.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee